OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

September 22, 1999

The Honorable Michael J. Guarino
Criminal District Attorney
Galveston County Courthouse
722 Moody, Suite 300
Galveston, Texas 77550

Opinion No. JC-0111

Re: Whether a certificate of deposit may be offered as a prize at a raffle conducted under the Charitable Raffle Enabling Act (RQ-0026)

Dear Mr. Guarino:

The Charitable Raffle Enabling Act, chapter 2002 of the Texas Occupations Code, prohibits a qualified charitable organization from offering money as a prize at a raffle conducted under the Act.[1] The statute does not define "money," but the term generally refers to coins and currency of the United States accepted as a medium of exchange. You ask whether a certificate of deposit may be offered as a prize. We conclude that a certificate of deposit, a negotiable instrument readily convertible to money, that is, a money equivalent, may not be offered as a prize at a raffle conducted under the Act.

A certificate of deposit is a negotiable instrument that entitles the holder to receive money. It is "a bank's written acknowledgment of a special deposit of money which the bank promises to pay to the order of a designated person, or to bearer." *Ames v. Great S. Bank*, 672 S.W.2d 447, 449 (Tex. 1984); *see also* TEX. BUS. & COMM. CODE ANN. § 3.104(j) (Vernon Supp. 1999) ("Certificate of deposit" is a negotiable "instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. [It] is a note of the bank.").[2] The legal effect of the certificate of deposit is that of a promissory note rather than simply a receipt of funds. *See Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.*, 667 S.W.2d 572, 575 (Tex. App.–Dallas 1984, no writ). The obligation assumed by a bank that issues a negotiable certificate of deposit is to pay the funds represented by the certificate of deposit to its

---

[1] House Bill 3155 of the 76th Legislative Session repealed article 179f of the Revised Civil Statutes and reenacted it without substantive change as chapter 2002 of the Texas Occupations Code. *See* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 1, secs. 2002.001-.058, 1999 Tex. Sess. Law Serv. 1431, 2359; *id.* § 6(a), 1999 Tex. Sess. Law Serv. at 2439-40 (repealing article 179f). For ease of citation, this opinion will refer to the provisions of the Act as they will be codified in the Texas Occupations Code.

[2] A "negotiable instrument" is an unconditional promise or order to pay a fixed sum of money to the bearer or to order that is payable on demand or at a definite time. TEX. BUS. & COMM. CODE ANN. § 3.104(a) (Vernon Supp. 1999).

holder, whoever that may be. *See id.* You ask whether such an instrument may be offered as a prize in a raffle conducted under the Charitable Raffle Enabling Act.

The Charitable Raffle Enabling Act was enacted under a specific constitutional exception to the general constitutional prohibition against gambling. Article III, section 47(a) of the Texas Constitution prohibits "lotteries and gift enterprises" in the state except those expressly authorized by the constitution. TEX. CONST. art. III, § 47(a). Prior to 1989, any raffle was a prohibited lottery, even a raffle for charity. *See* Tex. Att'y Gen. Op. No. JM-513 (1986). In 1989, the voters approved an amendment to the constitution–article III, section 47(d) – that allows the legislature by general law to permit a qualified religious society, qualified volunteer fire department, qualified volunteer emergency medical service, or a qualified nonprofit organization to conduct raffles subject to the conditions imposed by law. *See* TEX. CONST. art. III, § 47(d). The Charitable Raffle Enabling Act is the general law authorizing and regulating charitable raffles.

Under the Act, a qualified charitable organization may conduct raffles subject to the restrictions imposed by section 2002.056 of the Act. Section 2002.056 restricts the prizes that may be offered, by providing as follows:

(a)     A prize offered or awarded at the raffle *may not be money.*

(b)     Except as provided by Subsection (c),[3] the value of a prize offered or awarded at a raffle that is purchased by the organization or for which the organization provides any consideration may not exceed $50,000.

TEX. OCC. CODE ANN. § 2002.056(a), (b) (footnote and emphasis added).

We assume that the value of the certificate of deposit involved here does not exceed $50,000. Thus, the issue presented, for the purposes of this opinion, is whether a certificate of deposit is "money" under the Act.

The Act does not define "money." Generally, words not defined by the legislature are to be given their ordinary meaning. *See Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992); *see also* TEX. GOV'T CODE ANN. § 312.002 (Vernon 1998) (except words that have acquired specific meaning, words shall be given ordinary meaning). The ordinary meaning is to be given to "money" as used in section 2002.056, unless to do so would "lead to an absurdity or thwart the plain purpose of the Legislature." *Trimmier v. Carlton*, 296 S.W. 1070, 1074 (Tex. 1927); *see also Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex. 1997) (primary objective in construing statutes is to give effect to legislative intent); TEX. GOV'T CODE ANN. 312.005 (Vernon 1998) (in interpreting statutes a court shall diligently attempt to ascertain legislative intent). We think the

---

[3]Subsection (c) relates to lottery tickets with a face value of less than $50,000 that may be offered as a prize. TEX. OCC. CODE ANN. § 2002.056(c).

ordinary meaning of money does just that in this instance, and we must give weight to the intent of the voters and the legislature as reflected in the Texas Constitution and statutes limiting gambling in this state.

Black's Law Dictionary defines "money" in its usual and ordinary sense to mean "coins and paper currency used as circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate." BLACK'S LAW DICTIONARY 1005 (6th ed. 1991). The Oxford English Dictionary provides that in modern usage, the term is "commonly applied indifferently to coin and to such promissory documents representing coin (esp. government and bank notes) as are currently accepted as a medium of exchange. See PAPER MONEY." IX THE OXFORD ENGLISH DICTIONARY 992 (2d ed. 1989). Under the ordinary meaning of the term, it may be argued that a certificate of deposit is not money because it is not coin or currency of the United States accepted as a medium of exchange. See also Thompson v. Thompson, 236 S.W.2d 779, 791 (Tex. 1951) (certificates of deposit are not "cash" or "cash money").

Such a construction of the term money, however, ignores the existence of money equivalents common in our commerce. See Amberboy v. Societe de Banque Privee, 831 S.W.2d 793, 796 (Tex. 1992) (purpose of law of negotiable instruments "is to make the instrument the functional equivalent of money"); Bailey, Vaught, Robertson and Co. v. Remington Invs., Inc., 888 S.W.2d 860, 864 (Tex. App.–Dallas 1994, no writ) (same). Accordingly, under a construction limiting "money" to "coin" or "currency," a charitable organization could offer a certificate of deposit as a prize even though it represents money and entitles the winner to receive money. In fact, under the ordinary meaning of money, a charitable organization could offer as a prize any other instrument that represents money and that may be readily converted into money, such as a personal, traveler's or cashier's check or a money order. See TEX. BUS. & COMM. CODE ANN. § 3.104 (Vernon Supp. 1999) ("Negotiable Instrument") (c), (f) (defining "check," which includes "money order"); (g) (defining "cashier's check"); (h) (defining "teller's check"); (i) (defining "traveler's check"). In short, construing money within its ordinary meaning would render the Act's prohibition against offering money as a prize virtually meaningless by elevating form over substance: a raffle winner would not receive "money" but something that represents and is intended to convert to "money." See Ashworth, 943 S.W.2d at 438 (when construing statute, court may consider consequences of particular construction). For example, a winner would not receive a fifty dollar bill, but would receive instead a check for fifty dollars that could be cashed at the nearest bank or convenience store.

The purpose of the Act's prohibition is to prevent a charitable raffle from being a form of gambling or money-making activity for those who purchase a raffle ticket. Article III, section 47(d) specifically authorizes only raffles for charitable purposes, not bingo or lottery. Compare TEX. CONST. art III, § 47(d) with id. art III, § 47(b) & (e). In keeping with the limited constitutional authorization, the purpose of the section 2002.056 restriction is, we believe, to preclude a raffle from being a form of profit-making gambling activity like bingo or the state lottery, which obviously do not include a similar restriction. See TEX. OCC. CODE ANN. § 2001.420 (bingo prizes); TEX. GOV'T CODE ANN. §§ 466.401-.409 (Vernon 1998) (lottery prizes). This interpretation is supported not only by a reasonable and common-sense reading of article III, section 47 and the Act, but also by the

Act's legislative history. *See Ashworth*, 943 S.W.2d at 438 (when construing statute, court may consider object to be obtained, circumstances of statute's enactment, and legislative history). Representative Smith, sponsor of House Bill 240 that enacted the Charitable Raffle Enabling Act, explained that the purpose of the bill was to aid charitable organizations in their effort to raise funds for their causes: the raffles would entice people who normally do not make charitable contributions in effect to do so. *Hearings on Tex. H.B. 240 Before the House Comm. on State Affairs*, 71st Leg., R.S. (March 13, 1989) (tape available through Office of the House Committee Coordinator). He noted that the majority of people who participate in these raffles *do not expect to win, but participate to make a charitable contribution. Id.* (emphasis added). Significantly, the type of prize that Representative Smith seems to have had in mind to entice these contributions were goods, such as a quilt. *See id.* (giving example of a local church raffling off a quilt to church members). Lastly, Representative Smith emphasized that the legislation had been written tightly to *avoid raffles becoming profit-based operations similar to bingo or the state lottery. Id.* (emphasis added).

In keeping with the voters' purpose in ratifying article III, section 47(d) and the legislative intent of the Act, we believe that money as used in the Charitable Raffle Enabling Act includes negotiable instruments that represent money and are readily convertible to money or, in other words, are the equivalent of money. *Cf. Stewart v. Selder*, 473 S.W.2d 3, 9 (Tex. 1971) ("cash," which term encompasses "money," may properly be interpreted broadly "to mean securities readily convertible into cash or other types of property where the provisions of the will and the surrounding circumstances show that the term was used in that sense by the testator."); *Amberboy*, 831 S.W.2d at 796 (negotiable instruments intended to be functional equivalent of money); *Remington Investments, Inc.*, 888 S.W.2d at 864 (same). Accordingly, we construe "money" in section 2002.056 to include not only coins and currency of the United States *but also* negotiable instruments that are equivalent to money, such as certificates of deposit. Therefore, we conclude that a certificate of deposit may not be offered as a prize at a raffle conducted under the Act.

## SUMMARY

A certificate of deposit may not be offered as a prize at a raffle conducted under the Charitable Raffle Enabling Act, chapter 2002 of the Texas Occupations Code.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee